

IN THE UNITED STATE DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| CONDAS WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 07 C 06689 |
| | ) | |
| UNITED STATES, | ) | Honorable Judge Zagel |
| | ) | Magistrate Judge Cole |
| Defendant. | ) | |

NOTICE OF FILING

**FILED**
JUL 1 1 2008
Jul 11, 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

TO: Mr. Patrick J. Fitzgerald
United States Attorney
Mr. Jack Donatelli
Assistant United States Attorney
219 South Dearborn Street
Chicago, Illinois 60604

PLEASE TAKE NOTICE that on Friday, July 11, 2008, we filed with the Clerk of the United States District Court, Northern District, Eastern Division, PLAINTIFF'S AFFIDAVIT AND PHYSICIAN'S REPORT, a copy of which is attached hereto and served upon you.

S. JEROME LEVY & ASSOCIATES, P.C.

By: _____
S. Jerome Levy

S. JEROME LEVY & ASSOCIATES, P.C.
One East Wacker Drive, Suite 2500
Chicago, Illinois 60601
(312) 832-1616

PROOF OF SERVICE

I, Janet L. Drejas, on oath, state that I served a true and correct copy of PLAINTIFF'S AFFIDAVIT AND PHYSICIAN'S REPORT by mailing same in a properly stamped and addressed envelope to the above-captioned attorneys and depositing same in the U.S. Mail Box located at One East Wacker Drive, Chicago, Illinois 60601 this 11th day of July, 2008.

_____

[x]  Under penalties as provided by law pursuant to 735 ILCS 5/1-109 (1993), I certify that the statements set forth herein are true and correct.



IN THE UNITED STATE DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CONDAS WILLIAMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 07 C 06689 |
| ) | |
| UNITED STATES, ) | Honorable Judge Zagel |
| ) | Magistrate Judge Cole |
| Defendant. ) | |

**FILED JUL 11 2008 MICHAEL W. DOBBINS CLERK, U.S. DISTRICT COURT**

**AFFIDAVIT**

S. Jerome Levy, having been duly sworn on oath, deposes and states:

1. I am one of the attorneys for the Plaintiff, Condas Williams, have personal knowledge of the facts stated herein and am competent to testify as follows.

2. I have consulted and reviewed the facts of the case with a health care professional who I reasonably believe is knowledgeable in the relevant issues involved in the particular action, practices or has practiced within the last 6 years in the same area of health care or medicine that is at issue in this particular action, meets the expert standards set forth in paragraphs (a) through (d) of Section 8-2501 and is qualified by experience and demonstrated competence in the subject matter of this case and is familiar with psychiatric and mental health care.

3. The health care professional is a physician and is board certified in psychiatry. Attached hereto is a copy of the reviewing health care professional's report.

4. The reviewing health care professional has determined in a written report, after review of the medical record and other relevant material in this particular action that there is a reasonable and meritorious cause for filing of this action.

5. I have concluded on the basis of the reviewing health care professional's review and consultation that there is a reasonable and meritorious basis for filing this case.

6. The health care professional is a consulting expert.

AFFIANT FURTHER SAYETH NOT.

SUBSCRIBED and SWORN to before me
this 11th day of July, 2008.

*Janet L. Drejas*

"OFFICIAL SEAL"
JANET L. DREJAS
Notary Public, State of Illinois
My Commission Expires 08/23/10

S. Jerome Levy
S. Jerome Levy & Associates, P.C.
One East Wacker Drive, Suite 2500
Chicago, Illinois 60601
(312) 832-1616

July 10, 2008

Mr. S. Jerome Levy
S. Jerome Levy & Associates, P.C.
One East Wacker Drive, Suite 2500
Chicago, Illinois 60601

   Re: Condas Williams (Date of Birth: 05/29/1980)

Dear Mr. Levy:

As we discussed, I am a board certified psychiatrist. I am qualified by experience with the standard of care, methods, procedures and treatments relevant to the issues involved in this case. I currently practice and I have practiced within at least the last six years in psychiatry, including related to transfer and discharge of psychiatric patients and patients with mental health issues, and in the provision of services, including medications, as are involved in this case. I have practiced psychiatry in a prison setting, in a mental health facility, in a hospital setting and in private practice. I have experience with patients who have the diagnoses present here and with the medications involved. I have devoted a majority of my work time to the practice of medicine and specifically to psychiatry. I hold a valid Illinois license and the number is 036-065344. I am knowledgeable in the relevant issues involved in this case, including the provision of services, including medication and other services, to patients with the conditions as are involved in this case.

I have reviewed the relevant portions of the medical record and other relevant material involved in this case for Condas Williams, including but not limited to the records and material from the Stroger Hospital outpatient visit of June 1-2, 2005, the Cook County Hospital June 5, 2005, the Oak Forest Hospital admission and the Answer of the United States to the Complaint. After reviewing these materials, I have determined that there is a reasonable and meritorious cause for filing of this case against the United States of America for the reasons provided below.

The documents reveal that Condas Williams was confined to the United States Penitentiary from February 17, 2004 until May 17, 2005. While in the Penitentiary, he was given a diagnosis of schizophrenia, paranoid type. During his time at the Federal Penitentiary, the United States regularly provided Mr. Williams with medical care, including care, treatment, monitoring, medications, medical and psychiatric management for his conditions.

Mr. Williams was transferred from the United States Penitentiary on May 17, 2005 to a half-way house at 105 S. Ashland in Chicago, Illinois. At the time of discharge, Mr. Williams was still suffering from medical and psychiatric conditions. This was known to the United States. In addition, the United States knew or should have known that Mr. Williams required medication, services and continuity of care to properly manage his psychiatric conditions.

The records also reveal that Mr. Williams presented to Stroger Hospital in early June, 2005 (most of the records identify the visit as being on June 2, 2005 but another is dated June 1, 2005). At

presentation, his chief complaint documented in the Emergency Nursing Triage Assessment was "need medicine." A psychiatry consult was provided and he revealed a history that included depression for eight years, substance abuse and medications of Depakote, BuSpar, Fluoxetine, Risperdal, Zoloft, and Olanzapine. He denied both suicidal and homicidal ideation. The records also reveal that he was requesting a refill of his medication and reported a diagnosis of depression, anxiety and schizophrenia. He disclosed a preoccupation with thoughts about "old vendettas," guys yelling at him and cursing and at times gets "so down" that he worried about doing something to go back to the penitentiary. Mr. Williams reported poor sleep but normal appetite and feeling low. He was assessed as, among other things, fatigued, having poor tracking and concentration, and agitated with evidence of paranoia and delusions. He was thought to have limited insight and memory but adequate judgment. He was also assessed on Axis I to have bipolar disorder and was given a prescription for Zyprexa.

The records also reveal that on June 5, 2005, Mr. Williams was seen at Stroger Hospital as a result of a fall or jump from what is reported at one place as a five and another place a three story window. Mr. Williams reported that he had been thinking of being sent to war and somebody shot him. He was described as having racing thoughts and paranoid delusions. He reported not taking medications "for awhile." He was found to have, among other things, a compression spinal fracture and a left ankle fracture. He received in-patient care, including surgical procedures to address the fractures. Specifically, he had a spinal fusion performed on June 10, 2005 and open reduction and internal fixation of the ankle on June 15, 2005. Mr. Williams was eventually diagnosed with paraplegia. He continued to receive in-patient care and was subsequently transferred to Oak Forest Hospital for rehabilitation.

The applicable standard of care required in this situation given the facts present here that the United States, acting through its agents and health care providers, properly assess Mr. Williams' condition and needs prior to transfer, implement and execute an appropriate transfer plan, including proper types and amounts of medication, a reliable method of medication administration, monitoring and counseling services for Mr. Williams given his psychiatric conditions, secure an appropriate facility for transfer capable of promptly and properly implementing and executing the transfer plan, provide for a transfer plan and transfer facility with staff sufficient in number and training to monitor Mr. Williams' condition, behavior, and medication administration, and have guidelines and a system in place to ascertain that the monitoring and management of Mr. Williams' symptoms and conditions before and after transfer were effective.

The United States violated the applicable standard of care when it failed to properly assess Mr. Williams' condition and needs, including when it failed to implement and execute an appropriate transfer plan, including one that provided the appropriate amount and type of medication for Mr. Williams' condition and behavior, failed to select and place Mr. Williams in a facility capable of properly addressing his needs, including his medication and behavior management needs, failed to provide or secure a reliable and effective method of medication administration for Mr. Williams while at the half-way house so that he promptly and consistently received his medication as part of his transfer plan, failed to provide or secure appropriate monitoring and counseling services for Mr. Williams given his psychiatric conditions, including his disturbed

thoughts and paranoia, such that his condition was allowed to progress without effective intervention prior to his outpatient visit to Stroger Hospital, failed to secure a facility that could effectively monitor him to ascertain that his transfer plan was being appropriately carried out, failed to provide for a transfer plan and transfer facility with sufficient staff in number and training to monitor Mr. Williams' condition, behavior, and medication administration, including given the thoughts he was relating, and failed to have guidelines and a system in place to monitor and manage Mr. Williams' symptoms and conditions before and after transfer.

The failures of the United States as outlined above, including the failure to properly provide an appropriate transfer plan and effectively manage Mr. Williams' transfer, to provide or secure necessary and appropriate services, including medication administration, monitoring and counseling services, and sufficient staff in number and training to address his conditions, more likely than not contributed to the worsening of his psychiatric condition, reduction or cessation of his medication administration to the point that his condition worsened and led to a progressive exacerbation of his underlying condition. In addition, the failure of the United States to provide or secure an appropriate transfer plan and ascertain that the plan was implemented and Mr. Williams' was effectively monitored contributed to the resulting delay in obtaining appropriate medication, consults, diagnosis and treatment for Mr. Williams and his psychiatric condition, which more likely than not furthered the nature and extent of the damage caused by his condition and escalating thought disturbances, including paranoia.

Had the United States complied with the standard of care, it is more likely than not that Mr. Williams would not have had the worsening psychiatric condition, would not have experienced a progressive exacerbation of his underlying psychiatric condition, including the paranoia and thought disturbances, to the same extent and in the same manner as occurred here, and would not have resulted in a state of mind that led him to become injured by falling or jumping from the upper levels of the building and the resulting fractures and paraplegia. Moreover, had the United States complied with the standard of care, Mr. Williams more likely than not would have received work-up and prompt and appropriate medication administration to address any ongoing problems and would have had a transfer plan in place that would have identified his worsening condition and prevented him from having access to areas where he could fall or jump.

In addition, had the United States more promptly provided Mr. Williams with a transfer plan that included a prompt psychiatric work-up and consult such that it occurred prior to the Stroger Hospital outpatient visit of June 1-2, 2005, Mr. Williams would have more likely than not received more immediate assessment, medication, and appropriate consults and it is more likely than not that Mr. William's condition would have been more aggressively managed prior to his hospital admission on June 5, 2005. This would have substantially increased the likelihood that further work-up and care would have been timely performed and consults would have been promptly and properly obtained which would have more likely than not provided Mr. Williams with an increased likelihood to improve his condition, avoid further damage from the escalating psychiatric condition, including paranoia and thought disturbances, lessened the extent of his paranoia and averted the fall.

Had the United States complied with the standard of care, more likely than not Mr. Williams'

condition would have been properly assessed, a more appropriate transfer plan would have been created and implemented, the plan would have been more effectively executed and monitored, including that a facility with sufficient staffing and care needs would have been secured, and this would have resulted in Mr. Williams' care and conditions being more aggressively managed prior to June 1-2, 2005. This would have substantially increased the likelihood that further work-up would have been performed and consults would have been obtained which would have more likely than not led to proper and effective medication administration and treatment necessary to provide Mr. Williams with an increased likelihood to improve his condition and avoid the escalating paranoia and thought disturbance and thereby avoid injury.

As a result of the United States' above breaches of the standard of care, Mr. Williams' condition was permitted to progress and worsen and he suffered a severe and permanent injury, including the fractured spine and resulting paraplegia, that more likely than not would otherwise not have occurred.

For the reasons stated above, a reasonable and meritorious cause exists for the filing of this case.

Sincerely,

*Margaret Robling MD*
Margaret Robling, M.D.
676 N. St. Clair
Chicago, Illinois 60611